**UNITED STATES of America,**
**Appellee,**

v.

**Elizabeth Gail ASHFORD, Appellant.**

**No. 75–1685.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1976.

Decided Feb. 26, 1976.

Jerald W. Kinnamon, Cedar Rapids, Iowa, for appellant.

Alan H. Kirshen, Asst. U. S. Atty., Evan L. Hultman, U. S. Atty., Sioux City, Iowa, for appellee.

Before CLARK, Associate Justice,* BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

On June 19, 1975 the federal grand jury for the Northern District of Iowa returned a two-count indictment charging appellant, Elizabeth Gail Ashford, with two violations of the postal laws of the United States.

The first count charged that on or about June 22, 1974 at Cedar Rapids, Iowa the defendant in violation of 18 U.S.C. § 1702 did unlawfully take a letter which had been in a post office and authorized depository for mail matter, and did open, secrete and embezzle the same before it was delivered to the person to whom it was directed with design to obstruct the correspondence of the addressee. The letter was described as being from Bank Americard Center, P. O. Box 868, Omaha, Nebraska, and as addressed to Charles W. Ashford, c/o Elizabeth Ashford, 1626 Park Town Lane, N. E., Apt. 3, Cedar Rapids, Iowa 52402.

The second count referred to the same letter and charged in substance that on or about June 22, 1974 the defendant in violation of 18 U.S.C. § 1708 unlawfully received, concealed and had in her possession the letter in question which letter had been taken, embezzled and abstracted from and out of an authorized deposi-

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

tory for mail matter, knowing the same to have been taken, embezzled and abstracted.

The defendant, represented by court appointed counsel, entered a plea of not guilty to both counts of the indictment. The case was tried to a jury on July 28 and July 29, 1975 with The Honorable Edward J. McManus, Chief United States District Judge, presiding.

At the commencement of the trial counsel for the defendant filed a long written motion to dismiss both counts of the indictment. Ruling on that motion was reserved, and the trial proceeded. At the conclusion of the government's case defendant moved for a judgment of acquittal on both counts on which motion ruling was reserved. Defendant testified in her own behalf. At the end of all of the testimony the defense motion for judgment of acquittal was renewed, and ruling thereon was again reserved. The case was submitted to the jury on the district court's own instructions; certain instructions requested by the defendant at the close of the testimony were refused. The jury found the defendant guilty on both counts. Thereafter, the defendant filed an alternative motion for a new trial.

On August 22, 1975 the district court filed a memorandum discussing in detail the motions pending before it, including the alternative motion for a new trial. It was held that defendant's motion to dismiss Count I and her motion for judgment of acquittal on that count should be denied. As to Count II defendant's motions were granted. The motion for a new trial was denied.

On August 26, 1975 the district court adjudged the defendant guilty on Count I and imposed a probationary sentence conditioned on the defendant's making restitution to Bank Americard in the sum of $577.21. The defendant appeals.

For reversal the defendant contends basically that her connection and dealings with the letter referred to in the indictment did not constitute a violation of § 1702, and that her motion for judgment of acquittal on Count I should have been granted.[1]

What is now § 1702 is an old statute and is designed to protect the mails and correspondence moving therein from theft, embezzlement, obstruction, and meddlesome prying. The statute reads:

> Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

While there is authority to the effect that the protection extended by § 1702 ends when a piece of mail matter passes legitimately out of the control and beyond the responsibility of what is now the United States Postal Service, later and more authoritative cases establish that the statute is applicable until the mailed material is physically delivered to the person to whom it is directed or to his authorized agent, and this court is committed to that view. *Ross v. United States,* 374 F.2d 97, 103 (8th Cir. 1967); *Maxwell v. United States,* 235 F.2d 930 (8th Cir.), *cert. denied,* 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956). *See also United States v. Brown,* 425 F.2d 1172 (9th Cir. 1970); *United States v. Wade,* 364 F.2d 931 (6th Cir. 1966).

As thus construed, § 1702 is a broader statute than § 1708 under which the second count of the indictment was drawn. The protection of § 1708 is limited to mail matter which is still in the

---

1. Defendant also argues that her motion to dismiss Count I should have been granted. We disagree. Regardless of whether the defendant was guilty on Count I, we think that the count, which was drawn in the language of the statute, charged an offense within the jurisdiction of the district court.

possession or control of the Postal Service or which has been placed in an authorized receptacle for mail matter such as a private letter box and which has not lawfully been removed therefrom. *United States v. Matzker,* 473 F.2d 408 (8th Cir. 1973); *United States v. Birnstihl,* 441 F.2d 368 (9th Cir. 1971); *United States v. Logwood,* 360 F.2d 905 (7th Cir. 1966).

The evidence establishes substantially the following facts:

The defendant is a middle aged divorcee without children, At the time of the trial she had been employed by the Post Office at Cedar Rapids as a mail handler for some eight years.[2] Her home address was Apartment 3, 1626 Park Town Lane, N. E. in Cedar Rapids. She shared this apartment with another woman.

Charles W. Ashford is a public school teacher whose home is in Cedar Rapids. He is a married man and has one child; the given name of his wife is not "Elizabeth". Charles W. Ashford and the defendant are in no way related; there is no connection between them whatever, and they have never been personally acquainted.

In the spring of 1973 while Ashford was employed in the Cedar Rapids school system, he obtained a sabbatical leave of a year's duration to pursue further studies at the University of California at Los Angeles (UCLA), and he seems to have had a teaching fellowship at that institution. When Ashford and his family left Cedar Rapids to go to California he arranged to have his mail forwarded to his Los Angeles address.

Prior to leaving for California, Ashford on behalf of himself and his wife applied for and received a credit card issued by the Omaha branch of Bank Americard. The card was mailed to him at his Cedar Rapids address and was duly received.

The card came up for renewal in the regular course of business in June, 1974, and a renewal card was in fact mailed by Bank Americard to Ashford at his old Cedar Rapids address with directions on the envelope that it was not to be forwarded.

What happened to that letter, sometimes called the "first letter," while it was in the Cedar Rapids Post Office presents a sharply disputed question of fact. The government contended and introduced circumstantial evidence in an effort to prove that the defendant took advantage of her position in the Post Office to obtain possession of the letter and to cause it to be returned to Bank Americard with a change of address notation designed to procure ultimate delivery to defendant's own mail box with the defendant identified as a "c/o addressee." And it was the government's theory that the defendant knew that the first letter contained a credit card, and that she intended to gain possession of the card and use it fraudulently for her own benefit.

Testifying in her own behalf the defendant emphatically denied that any such thing happened and insisted that she never saw or had anything to do with the first letter.

In any event the first letter eventually came back to Bank Americard, and the credit card contained in that letter was remailed to Charles W. Ashford in care of the defendant at her home address. And this second letter was duly deposited in the defendant's mail box and was removed therefrom either by the defendant or, according to the defendant, by the woman who shared her apartment.

At some point after the second letter was delivered, the defendant opened it and thereafter used the card to purchase certain goods and services on credit. In connection with each purchase, she signed the invoice with her own name, "Elizabeth W. Ashford."

When the misuse of the card was discovered, an investigation was commenced which led inevitably to the defendant and to her resultant prosecution.

In 1974 the defendant was a woman of mature years and was an experienced

---

2. When criminal charges against the defendant were filed, she was suspended indefinitely from her employment and was so suspended when she testified.

postal employee. In the course of the trial a good deal of evidence was introduced as to practices and procedures in the Cedar Rapids Post Office and as to the nature of the defendant's employment therein. It is entirely possible that the defendant came into possession of the original letter and with fraudulent intent caused the letter to be returned to Bank Americard in such a manner as to ensure that it would be remailed to her own address. And the government advanced that possibility as an alternative prosecution theory; however, the district court found that there was no evidence to sustain that theory.

Assuming that the defendant had no connection with the first letter and did not procure the delivery of the second letter to her apartment, nevertheless, in the special circumstances proved in this case, the jury could have found that the defendant, who had special knowledge because of her position as a post office employee, knew that the letter had been misdirected and that she had neither a right nor a privilege to open the letter and appropriate its contents, and that she knew that if she kept the letter, whether she opened it or not, it would not be delivered to Mr. Ashford, and that by retaining possession of the letter she would obstruct the correspondence between Bank Americard and Ashford, and that she intended to obstruct it.

■ The defendant could not contend successfully that she had any authority from Mr. Ashford to receive or open his mail or to use a credit card intended for him and his wife.[3] Consequently, her argument here boils down to the proposition that a "c/o addressee" of a letter is a person to whom the letter is directed within the meaning of § 1702, and that as far as that statute is concerned, a "c/o addressee" can deal with a letter and its contents received in that capacity as he or she chooses. We do not accept that proposition.

■ Whether a "c/o" designation appearing on an envelope is simply part of the address or whether it amounts to something else, we do not think that the designation automatically entitles the "c/o addressee" to hold the letter indefinitely or to open it or to appropriate the contents thereof to his or her own use. And, we think that in dealing improperly with a letter so received a "c/o addressee" can be guilty of violating § 1702 where the appropriate unlawful intent is shown.

If, as in *Maxwell, supra,* a third party thief who steals mail which has been lawfully removed from a letter box but not delivered to the person to whom it was directed is guilty of violating § 1702, we see no reason to hold that a "c/o addressee" who wrongfully appropriates a letter that comes into his hands as such an addressee should be immune from prosecution under that statute. Indeed, the connection between the mails and a theft or embezzlement of a letter by a "c/o addressee" is arguably closer than the connection that exists when a third party steals a letter that has left the mails but has not been delivered to the addressee.

■ We hasten to add that a "c/o addressee" who retains or opens a letter designed ultimately for someone else does not necessarily violate § 1702. The "c/o addressee" may do so inadvertently or by mistake, or he may be authorized by the true addressee, either expressly or by implication, to retain or open the letter, or even in the absence of such an authorization the conduct of the "c/o addressee" in connection with the letter may be justified or excused by the circumstances of a particular case.

■ In order to constitute a violation of § 1702 by a "c/o addressee" or by anyone else for that matter, there must be a *mens rea,* the specific evil intent to obstruct correspondence or to pry into the business or secrets of another. Such an intent was alleged in this case, and,

---

**3.** In the brief filed on behalf of the defendant it is at least suggested that defendant might be considered as the agent of Bank Americard. We attach no weight to that suggestion or argument even if we indulge the assumption that defendant had nothing to do with the first letter and did not cause the second letter to be mailed.

as indicated, the jury could have found, and evidently did find, that such intent existed.

■ Our conclusion, then, is that the government made a submissible case on Count I, and that the verdict of the jury was sustained by substantial evidence. Thus, the district court did not err when it refused to grant defendant's motions for judgment of acquittal on Count I.

■ The district court did not err in refusing to give any of the four requests for instructions submitted by counsel for the defendant. Of those four instructions only Request No. 3 has any real significance here.[4] That request, which counsel refers to as the defendant's "theory of defense" instruction, would have told the jury that if a letter is addressed to one person in care of another person, delivery of the letter to either is proper under the law. The request essentially stated the rule laid down in 39 CFR (1974 ed.) § 154.1(a)(f), and it was correct as an abstract proposition. However, as far as Count I was concerned, the issue was not whether the Postal Service might properly deliver the letter to the defendant or whether she could properly receive it into her physical possession. The question was what she had a right to do with the letter and its contents after delivery. Request No. 3 does not touch that question and was not adequate to present defendant's ultimate theory to the jury. It was not error to refuse the request.

The district court on its own motion gave twenty-two numbered instructions. Most of those instructions were standard instructions, and it seems to us that most of the substantive instructions were more closely geared to the second count of the indictment than to the first.

As far as Count I was concerned, the two most crucial instructions were No. 7 which set out the essential elements of the offense charged in Count I, and No. 14 which told the jury that intent may be proved by circumstantial evidence, and that ordinarily a person may be presumed to intend the natural and probable consequences of his acts.

Instruction No. 7 advised the jury that before it could properly convict the defendant of violating § 1702 it must find from the evidence beyond a reasonable doubt: (1) that the defendant took a letter which had been in a Post Office or authorized depository for mail matter or in the custody of a letter carrier; (2) that the letter was taken before it was delivered to the person to whom it was directed; and (3) that the letter was taken "with the specific intent to obstruct the correspondence or to pry into the business of secrets of another."

■ In defining the elements of the offense charged in Count I the district court tracked the language of § 1702, and accurately and adequately defined the essential elements of the offense charged. *Batsell v. United States,* 403 F.2d 395 (8th Cir. 1968), *cert. denied,* 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785 (1969); *Lumetta v. United States,* 362 F.2d 644 (8th Cir. 1966); *Williams v. United States,* 328 F.2d 256 (8th Cir.), *cert. denied,* 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739 (1964).

[11] Had the defendant made an appropriate request, we think that she might well have been entitled to a more detailed instruction with respect to her status as a "c/o addressee" as bearing upon whether she acted with unlawful intent to obstruct the correspondence in question. The jury might well have been told that it might consider her status, along with her explanation of her conduct, and along with all of the other evidence in the case in determining whether or not she acted with the requisite criminal intent. But, no appropriate request for such an instruction was

---

4. Request No. 1 related to Count II of the indictment on which count the defendant was ultimately acquitted. Request No. 2 purported to set out the elements of the offense charged in Count I; those elements were adequately set out in the court's Instruction No. 7. Request No. 4 related to circumstantial evidence and was not a correct statement of the law. *See Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 S.Ed.2d 124 (1975).

made, and we do not consider that the district court was required to give a more elaborate instruction on its own motion.[5]

Two other contentions advanced by the defendant may be disposed of briefly.

During its deliberations the jury inquired of the district court as to whether a private mail box is an authorized depository for mail matter. Over the objection of defense counsel the district court answered that inquiry in the affirmative. In asking the question we do not know whether the jury was concerned with Count I or Count II; in any event the answer given was correct, and we see no error in the district court's answering the question.

In instructing the jury on the weight of the evidence and credibility of witnesses the district court advised that in making its judgments in those areas the jury might consider the interest, if any, that a witness might have in the outcome of the case. Defendant contends that the instruction amounted to a comment on the fact that the defendant had testified and invited the jury to disbelieve her testimony. We consider that contention to be frivolous. *United States v. Brown*, 453 F.2d 101, 107 (8th Cir. 1971), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *Taylor v. United States*, 390 F.2d 278, 284–85 (8th Cir.), *cert. denied*, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968); *Foley v. United States*, 290 F.2d 562, 569 (8th Cir. 1961).

No error appearing, the judgment of the district court is affirmed.

---

**5.** We note that in Instruction No. 14 the district court told the jury, among other things, that in passing upon a question of intent it might consider "any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind." It seems obvious to us that the jury knew that it was concerned with the second letter and that it must have known that the defendant was the "c/o addressee" of that letter.