**UNITED STATES of America, Appellee,**

v.

**John Henry BROWN, Appellant.**

**No. 76–1733.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1976.

Decided March 16, 1977.

Alan W. Weinblatt, St. Paul, Minn., on brief for appellant.

Elizabeth A. Egan, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on brief.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.*

HEANEY, Circuit Judge.

John Henry Brown appeals from his conviction for taking a package from an authorized depository for mail with design to open, secrete and embezzle in violation of 18 U.S.C. § 1702. Brown argues that the trial court erred in refusing his request for a lesser included offense instruction based upon 18 U.S.C. § 1701, in refusing to define "authorized depository for mail" in accordance with his request and in instructing the jury that as a matter of law decoy packages are "mail matter" within the meaning of 18 U.S.C. § 1702. We affirm.

* ROBERT VAN PELT, Senior District Judge, District of Nebraska, sitting by designation.

In response to reports of mail theft at an apartment complex in St. Paul, United States postal inspectors prepared six test packages containing various items of merchandise. An electronic tracking device was inserted in one of these packages. Each was wrapped, addressed to a person living in the apartment complex, and affixed with proper postage which was cancelled by a clerk in the St. Paul Post Office.[1] Postal inspectors planted the packages at about 7:00 p. m. on a cabinet shelf in the rental office of the apartment complex where mail was usually kept.[2] The area was then placed under surveillance.

Brown, a security guard at the apartment complex, arrived for work at about 10:00 p. m. Two men, later identified as John Gilbert and John Bartsch, arrived in a white Oldsmobile at 4:15 a. m. After an unsuccessful attempt to enter the apartment complex's security garage, one of the men approached the office door and was let in by Brown. The garage door was then opened and the Oldsmobile entered.

An hour later inspectors reported losing the transmitter signal at the same time the Oldsmobile was seen leaving the garage. The inspectors then entered the office, saw that the test packages were gone and arrested Brown. A search of the Bartsch apartment revealed the contents of the packages.

Although they lived in the same duplex, Brown testified that he only knew Bartsch and Gilbert slightly. He claimed that Bartsch came to the door of the apartment rental office and asked to come in on the morning in question. Brown refused to let him in until Bartsch produced a gun and demanded entry. He then helped Bartsch take the packages out of the rental office and place them in Bartsch's car. Bartsch testified that he went to the apartment complex and picked up the packages at Brown's request.

## I.

Brown was tried under a single-count indictment[3] charging that he "did take a package * * * which had been in an authorized depository for mail matter, before the same had been delivered to the person to whom it was directed, with the design to open, secrete and embezzle the same" in violation of 18 U.S.C. § 1702. That section, entitled "Obstruction of correspondence," provides:

Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter * * * before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

He maintains that the trial court erred in denying his request for an instruction on the lesser included offense of general obstruction of the mails, 18 U.S.C. § 1701, which provides:

Whoever knowingly and wilfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

---

1. One of the packages was addressed to Jim Marchio, a resident of the apartment complex. This package was taken from the depository and provided the basis for Brown's indictment and subsequent conviction.

2. According to the testimony of the apartments' assistant manager, packages addressed to the tenants are brought by the postal carrier to the rental office and placed on a cabinet shelf. This shelf is also used for holding United Parcel Service packages. A card notifying the tenant is then placed in his mailbox, and he may secure the package by returning the card to the management. No written authority for this procedure is obtained from the tenants; rather, the practice is explained to new tenants when they come to the office to pick up packages. If a tenant requests that his packages be held instead at the post office, that arrangement is made.

3. A second count of the indictment, charging an offense under 18 U.S.C. § 1708, was dismissed prior to trial.

■ The standard against which this Court must evaluate a request for a lesser included offense instruction is set forth in *United States v. Thompson,* 492 F.2d 359, 362 (8th Cir. 1974):

> A defendant is entitled to an instruction on a lesser included offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i. e., a charge may be demanded by either the prosecution or defense. (Emphasis omitted.)

*Accord, United States v. Brischetto,* 538 F.2d 208, 209 (8th Cir. 1976).

■ The government does not dispute Brown's claim that the first, second and fifth requirements of *Thompson* were met. Rather, it contends that the trial court properly denied the requested instruction on the grounds that the evidence in this case failed to satisfy the third and fourth requirements.[4]

Our review of the record convinces us that the third requirement in *Thompson* was met. If the jury did not believe Brown's duress defense, they had ample evidence to find him guilty of knowing and wilful obstruction of the mails.

■ We do not believe, however, that the fourth requirement of *Thompson* was satisfied. The jury could not consistently find Brown innocent of § 1702 and guilty of § 1701. Two elements differentiate the crimes. The first relates to the type of obstruction of the mails required. Section 1702 requires a showing that mail matter was taken,[5] while § 1701 only requires a general obstruction of the passage or transmission of the mail.[6] Had there been a factual dispute as to whether Brown's conduct amounted to a taking, a lesser offense instruction based on § 1701 might have been justified. However, this instruction was unnecessary since Brown admitted taking the packages. The second element differentiating the two crimes concerns the specific intent required. Brown was charged with the taking of mail matter "with the design to open, secrete, and embezzle the same" in violation of § 1702. A knowing and wilful obstruction of the mails is required for § 1701. Although, under appropriate factual circumstances, a jury

---

4. Although the government makes no comment regarding Brown's claim of mutuality, it is obvious that if his request for a lesser included offense instruction must fail because it is not justified by the evidence, any such request by the government must likewise fail. The purpose of the fourth requirement of *Thompson* is that a lesser offense instruction be given only when the elements differentiating the two crimes are in sufficient dispute that the jury can rationally find the defendant innocent of the greater but guilty of the lesser offense. This requirement is intended to prevent the jury from capriciously convicting on the lesser offense when the evidence requires either conviction on the greater offense or outright acquittal. *See Sansone v. United States,* 380 U.S. 343, 349–350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Sparf v. United States,* 156 U.S. 51, 63–64, 15 S.Ct. 273, 39 L.Ed. 343 (1895); *United States v. Harary,* 457 F.2d 471, 478–479 (2nd Cir. 1972). This purpose obtains with equal force whether the lesser offense is sought to be placed before the jury by the defense as a requested instruction, or by the prosecution as a requested instruction or as a separate count in the indictment. *United States v. Harary, supra* at 478–479. *See also, Fuller v. United States,* 132 U.S.App.D.C. 264, 407 F.2d 1199, 1230 n. 41 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); 8A J. Moore, Federal Practice ¶ 31.03[3], at 31–20—31–21 n. 35 (2d ed. rev. 1976).

5. *See United States v. Ashford,* 530 F.2d 792, 798 (8th Cir. 1976); *United States v. Costello,* 255 F.2d 876, 881 (2nd Cir.), *cert. denied,* 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958).

6. Historically, prosecutions under the predecessors of § 1701 have involved "obstruction" such as the unlawful delay of mail trains, *United States v. Anderson,* 101 F.2d 325 (7th Cir.), *cert. denied,* 307 U.S. 625, 59 S.Ct. 822, 83 L.Ed. 1502 (1939); *United States v. Thomas,* 55 F. 380 (D.W.Va.1893), and obstruction of the travel of letter carriers. *United States v. Woodward,* 44 F. 592 (E.D.S.C.1891).

might find that a defendant wilfully obstructed the mails without design to open, embezzle, or secrete the same, this is not such a case. Brown's only defense was that of duress. If the jury believed this defense, they could not have found the specific intent required by either section. If the jury rejected this defense, the only way it could have found wilful obstruction without also finding a design to secrete or embezzle was if it ignored the uncontroverted testimony that he helped carry the packages to the waiting car. Where the evidence required for conviction of the greater offense but not for conviction of the lesser offense is undisputed, there is no rational basis for acquitting the defendant of the greater offense, and a lesser included offense instruction is not required. *Sansone v. United States,* 380 U.S. 343, 349–350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Sparf v. United States,* 156 U.S. 51, 63–64, 15 S.Ct. 273, 39 L.Ed. 343 (1895); *United States v. Klugman,* 506 F.2d 1378, 1381 (8th Cir. 1974); *United States v. Rucker,* 496 F.2d 1241, 1244 (8th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 181 (1974).[7]

## II.

Brown's second contention is that the trial court's instruction defining "authorized depository for mail" in accordance with 39 C.F.R. § 151.1(a) (1974) was inadequate because it failed to include the substance of 39 C.F.R. § 151.1(b) (1974).[8] Brown argues that, reading these subsections together, the presence of non-mail items (United Parcel Service packages) on the cabinet shelf used as a depository caused the depository to lose its "authorized" status and rendered his taking outside of § 1702. He concedes that since non-mail items such as newspapers and circulars are often placed in private mailboxes, holding § 151.1(b) as a precondition for the designation of private mailboxes as authorized depositories would lead to an impractical result. He urges, however, that this problem is avoided since "receptacle" as used in § 151.1(b) refers only to private receptacles other than private mailboxes.

■ We find no support for this interpretation in the regulations cited. The only guidance in § 151.1 as to the meaning of the term "receptacle" is found in subsection (a). There the term "receptacle" includes letterboxes. It seems unlikely that the draftsmen of § 151.1 intended the term to have a different meaning in the very next subsection, § 151.1(b), particularly since the term is used in subsection (b) with specific reference to subsection (a). We agree with the holding of the trial court that § 151.1(b) is merely a prohibition against the use of private mailboxes or other private receptacles for the delivery of non-mail items, and does not in any way alter their authorized status. *See Rockville Remainder, Inc. v. United States Postal Service,* 480 F.2d 4, 6 (2nd Cir. 1973). The request that § 151.1(b) be included within the definition of "authorized depository for mail" was properly denied.

■ Brown next contends that if the cabinet shelf in the rental office was an authorized depository for mail, then as a matter of law, the management of the apartments was the agent of the addressees. Since

---

7. Brown also claims that because it is "common practice" in the District of Minnesota for the prosecution to use § 1701 as a plea bargaining tool in conjunction with § 1702 or § 1708 he should be entitled to a lesser included offense instruction. In the absence of any record below documenting this alleged "common practice," we decline to pass upon this question. We note, however, that overbroad prosecutorial discretion in a related context has been sharply criticized. *See Berra v. United States,* 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956) (Black, J., dissenting); K. Davis, Discretionary Justice: A Preliminary Inquiry, 213–214 (1969).

8. The regulations cited provide:

§ 151.1 *Private mail receptacles.*

   (a) Designation as authorized depository. Every letterbox or other receptacle intended or used for the receipt or delivery of mail * * * is designated an authorized depository for mail within the meaning of 18 U.S.C. sections 1702, 1705, and 1708.

   (b) Use for mail only. Receptacles described in § 151.1(a) shall be exclusively for mail * * *.

39 C.F.R. § 151.1 (1974).

delivery to the agent of the addressee terminates federal custody under § 1702, *United States v. Ashford,* 530 F.2d 792, 795 (8th Cir. 1976); *Ross v. United States,* 374 F.2d 97, 103 (8th Cir.), *cert. denied,* 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967), his motion for dismissal should have been granted. We disagree. A finding that the cabinet shelf in the rental office was "intended or used for the receipt or delivery of mail" does not in itself establish that the manager of the building had any express authority to receive mail matter as the agent of any specific addressee. *See Maxwell v. United States,* 235 F.2d 930, 931 (8th Cir.), *cert. denied,* 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956). The fact that the office shelf was used for the delivery of mail does not necessarily mean that the addressee of the particular package cited in the indictment approved, or was even aware, of this procedure. The extent to which the evidence tended to establish an agency relationship was a question of fact to be resolved by the jury at trial. *See United States v. Ashford,* 403 F.Supp. 461, 466 (N.D.Ia.1975), *aff'd,* 530 F.2d 792 (8th Cir. 1976).

### III.

Finally, Brown contends that the trial court erred in instructing the jury that decoy packages are "mail matter" within 18 U.S.C. § 1702. He argues that because it was never intended that the addressee receive the packages, there could be no obstruction of their delivery within § 1702. He urges that this situation is analogous to the one in *United States v. Grieco,* 187 F.Supp. 597 (S.D.N.Y.1960), where it was held that the taking of a package addressed to a fictitious addressee was outside the scope of § 1702.

We need not decide whether we agree or disagree with the holding in *Grieco.* Here, the package providing the basis for the indictment and conviction was not addressed to a fictitious person, but to a real person at an actual address.[9] This package, affixed with proper postage, was clearly capable of delivery. *See Ross v. United States, supra* at 103. Under these circumstances, the motives of the sender are irrelevant. *Cf., Goode v. United States,* 159 U.S. 663, 669–671, 16 S.Ct. 136, 40 L.Ed. 297 (1895); *In re Wight,* 134 U.S. 136, 148–149, 10 S.Ct. 487, 33 L.Ed. 865 (1890). We find no error in the trial court's instruction.

The judgment of conviction is affirmed.

---

9. Brown also argues that because there was a discrepancy between the addressee named in the indictment and the tenant to whom the package was directed, there was no "person" to whom the package was directed. This argument is frivolous. The fact that the addressee's name was incorrectly typed in the indictment does not transform him into a fictitious person.