UNITED STATES of America, Appellee,

v.

Willie B. MURRY, Appellant.

UNITED STATES of America, Appellee,

v.

Barry J. DIXON, Appellant.

Nos. 78–1403, 78–1404.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1978.

Decided Dec. 15, 1978.

Howard Eisberg, Kansas City, Mo., argued and on brief, for appellant Murry.

Ronald L. Hall, Asst. Fed. Public Defender (argued), and David R. Freeman, Fed. Public Defender, Kansas City, Mo., on brief for appellant Dixon.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., argued for appellee; Ronald S. Reed, Jr., U. S. Atty. and Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo., on brief.

Before BRIGHT, STEPHENSON, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Barry J. Dixon and Willie B. Murry appeal from their convictions following a jury trial for having obstructed mailed correspondence by taking, before delivery, and opening a letter addressed to the Oakwood Country Club of Kansas City, Missouri, which had been in an authorized mail depository, in violation of 18 U.S.C. §§ 2 and 1702 (1976).[1] On this appeal, Dixon and Murry contend that the Government failed to prove an offense under section 1702 because the taking of the letter occurred after the letter had been delivered to an authorized agent of the addressee. Murry, in addition, contends that the Government failed to prove that he aided or abetted any obstruction of the mail, under 18 U.S.C. § 2, for the obstruction offense had been completed by Dixon before Murry attempted to sell the check contained in the stolen letter. After reviewing the record, we affirm the conviction of Dixon, but reverse Murry's conviction.

## I. Facts.

On or about January 25, 1978, the Maurice Brown Company mailed a check in the amount of $1,213.94, payable to the Oakwood Country Club, in a letter addressed to the Country Club at its postoffice box No. 19762 in Kansas City, Missouri. The Oakwood Country Club authorizes the Columbia Union Bank (the Bank) to receive its mail addressed to the Country Club's Kansas City postoffice box. Neither the Bank nor the Country Club received actual delivery of this mailing.

The Bank contracted with Mail Delivery Services, a private mail forwarding service,

1. Section 1702 reads as follows:

§ 1702. *Obstruction of correspondence*
Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both. [Emphasis added].

to pick up mail from the Country Club's postoffice box and to physically deliver that mail to the Bank. The president of Mail Delivery Services testified that his organization—not part of the Postal Service—"acts as agents for companies on their mail to and from the post office." In Mail Delivery Services' operations, designated employees empty the clients' postoffice boxes and sort the letters for delivery by other employees who carry and deliver the mail over regular routes.

Mail Delivery Services employed Barry Dixon and Willie Murry to deliver mail on specified routes during January 1978, but did not authorize either of them to empty mail from postoffice boxes. Dixon picked up his mail for route delivery at the Kansas City general postoffice on January 27, 1978.

Dixon admitted that he had taken the Oakwood Country Club's letter and check in question on the morning of January 27, 1978. A postal inspector in his testimony at trial related a part of Dixon's statement made to the inspector after Dixon had been arrested:

[Dixon] was working in the lobby of the post office along with other employees of Mail Delivery Services when he had some mail in his hand, and he happened to see this envelope addressed to Oakwood Country Club from the Maurice L. Brown Company lying on the lobby desk with other mail.

* * * He could see it was a check, and that he laid the mail he had in his hand down on top of that and he just picked it all up in one stack. And he said that way he would avoid being seen by the other employees.

And he said after he picked it up, he took it out to his truck parked in front of the post office.

On February 1, 1978, Murry and Dixon jointly attempted to sell the check at a storefront "sting" operation, which agents of the U. S. Bureau of Alcohol, Tobacco and Firearms and the Kansas City Police Department conducted in Kansas City for the purpose of detecting persons dealing in stolen property, especially firearms. Murry

physically possessed the check at the time of the attempted sale. During that transaction, which was videotaped at the storefront, one or both of the defendants stated that the check "came from the mail room."

In a post-arrest statement to a postal inspector, Murry admitted attempting to sell the stolen check at the storefront operation, but he denied stealing the check. As already indicated, Dixon admitted the theft of the check to the same postal inspector. Dixon further stated to the inspector that "someone had told him that they could get rid of the check fairly easily if he could [steal] some * * *," and that he gave the check to "someone" on the afternoon of the theft to sell it. According to Dixon, that person, not named, could not dispose of the check and returned it the following Sunday night, January 29. Dixon retained the check until the next Wednesday, February 1, when he gave it to Murry and then accompanied Murry to the storefront operation.

II. *Whether Section 1702 Was Violated.*

Both appellants contend the trial court erred in denying their motions for acquittal on the ground that theft of a letter from a receiving agent of the addressee does not constitute a violation of section 1702. Alternatively, they contend the trial court erred by refusing to submit the following proposed instruction:

The statute [§ 1702] under which the defendants are charged is applicable until the mail is delivered to the person to whom it is directed or to his authorized agent.

■ We have consistently held that section 1702 protects mail matter until it is delivered to the person to whom it is directed or to his authorized agent. In defining the offense we recently said:

The crucial question under § 1702 is what constitutes delivery so as to terminate the statute's applicability. In *United States v. Maxwell*, 137 F.Supp. 298, 303 (W.D.Mo.1955), Judge Ridge found that "it is apparent from . . . the

Act, that the Congress intended to protect 'letters' . . . not only while they are in the physical possession of the Post Office Department, but also thereafter." In affirming the district court Judge Sanborn noted:

> It seems to us, however, that the plain language of the statute discloses a clear intent on the part of Congress to extend federal protection over mail matter from the time it enters the mails until it reaches the addressee or his authorized agent.

*Maxwell v. United States*, 235 F.2d 930, 932 (8th Cir.), *cert. denied*, 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956). [*United States v. Hill*, 579 F.2d 480, 481–82 (8th Cir. 1978).]

Thus, section 1702 reaches mail not yet delivered to the addressee or his authorized agent, even though the postoffice has relinquished possession of the mail matter. *See, e. g., United States v. Ashford*, 530 F.2d 792 (8th Cir. 1976) (defendant violated section 1702 by appropriating letter delivered "c/o" defendant, where addressee had not authorized defendant to receive his mail); *Maxwell v. United States, supra.*

The evidence here establishes that after an employee of Mail Delivery Services had removed the Brown letter from the Country Club's postoffice box, Dixon surreptitiously picked up the letter from a table in the postoffice. The question arises whether at that time the letter had been delivered to an authorized agent of the Country Club.

Appellants argue that the evidence established Mail Delivery Services as the authorized agent for the addressee and that Mail Delivery Services "received" the letter in question for the Oakwood Country Club when it removed the letter from the Club's postoffice box. Thus, according to the appellants, receipt of the letter in question by Mail Delivery Services accomplished delivery of mail to the addressee Country Club through the addressee's authorized agent, and such receipt takes this case outside the purview of section 1702.

■ Although we entertain substantial doubt, for reasons set forth in the margin, that the evidence supports appellants' argument,[2] we need not decide the issue of Mail Delivery Services' alleged agency for the Country Club. Here the district court determined, and we agree, that the undisputed evidence established that Dixon purloined the letter before Mail Delivery Services had taken possession of the letter for the purpose of delivery.[3] The letter lay on a table in the postoffice when Dixon took it. No Mail Delivery Service employee having authority to deliver the letter possessed the letter at that time. The mere removal of the letter from a postoffice box by one authorized to remove the letter but not authorized to receive the letter for the addressee does not amount to delivery of the

2. The record establishes that the Country Club expressly authorized only its own personnel and the Bank to receive its mail. No evidence in the record indicates that the Country Club knew that a private mail carrier would pick up mail from its postoffice box or that it authorized the Bank to contract with such a private carrier. Moreover, even if the Country Club impliedly authorized Mail Delivery Services to carry unopened mail from the Club's postoffice box to the Bank, the delivery service's possession of the letter in the course of such a limited agency does not obviously constitute delivery of the letter "to the person to whom it was directed" so as to remove the letter from section 1702's protection. However, for reasons set forth in the text, we need not decide the reach of section 1702 as applied to mail delivered to a private mail handler.

3. In ruling on defendants' motion for acquittal and request for instruction that section 1702 did not apply upon delivery to the addressee or his agent, the district court said the uncontradicted evidence indicated that, at the time Dixon took the letter,

> [the letter] was on a table at a spot where it was to go into some other person's possession, who, as an employee of the delivery company, was to have delivered it to the addressee and instead the defendant in this case at that point intercepted it. It never got to such other employee. And he intercepted it for his own purposes and not as delivering agent or employee of the delivering agent, but with intent to take it and keep it for his own use and purposes.
>
> So it actually didn't get even to an employee of the delivering company who had authority to take it.

mail or remove it from the protection of section 1702. *See Maxwell v. United States*, 235 F.2d 930 (8th Cir.), *cert. denied*, 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956).[4]

Accordingly, Dixon's conduct in taking the letter from its location in the postoffice establishes a violation of section 1702 as a taking before delivery, and the district court properly denied appellants' motions for acquittal.

■ We also hold that the district court properly refused appellants' proposed instruction relating to delivery to an authorized agent as no evidence supported appellants' theory that an authorized agent received the letter.

### III. *The Conviction of Murry.*

We now turn to appellant Murry's contention that his conviction should be set aside for want of evidence that he participated in the embezzlement of the letter.

■ The Government contends that it has proved Murry an aider or abettor[5] in the section 1702 violation by showing that he possessed the mail matter at the storefront location prior to delivery of the letter to the addressee.

We have carefully reviewed the record. No evidence connects Murry with Dixon's appropriation of the letter. The record shows Dixon told a postal inspector that someone, not named in the record, had encouraged his taking of the letter. That evidence, however, does not implicate Murry as encouraging the theft of the letter by Dixon. The evidence also indicates that on the day of the theft Dixon gave the letter first to an unnamed person, apparently intending that person to cash the check for him. No evidence identifies Murry as that unnamed individual. That person did not succeed in cashing the check and returned it to Dixon two days later. Murry is first shown in possession of the check several days after its theft.

■ The Government argues that Murry's possession of the recently stolen check, if unexplained, would permit the jury to infer that Murry participated in the theft from the mails. *See United States v. Owens*, 424 F.2d 266 (6th Cir.), *cert. denied*, 400 U.S. 844, 91 S.Ct. 89, 27 L.Ed.2d 81 (1970); *Doub v. United States*, 341 F.2d 572 (9th Cir.), *cert. denied*, 382 U.S. 851, 86 S.Ct. 98, 15 L.Ed.2d 89 (1965). *Cf. Bunn v. United States*, 535 F.2d 1077 (8th Cir.), *cert. denied*, 429 U.S. 923, 97 S.Ct. 322, 50 L.Ed.2d 290 (1976) (possession by stranger to addressee, together with evidence of proper mailing and nonreceipt by addressee, may permit inference that mail matter was stolen). Here, however, the prosecution's evidence explained that Murry received the check from Dixon on February 1, five days after Dixon, acting alone, stole the letter containing that check.

■ The Government makes the further contention, relying on language in *United States v. Ashford*, 530 F.2d 792 (8th Cir. 1976), that the offense of obstructing the mails under section 1702 is a continuing one. Therefore, the Government argues, evidence of Murry's possessing the stolen check before it had been delivered to the addressee or an authorized agent established that Murry violated section 1702.

---

4. In *Maxwell*, the defendant resided in a multiunit dwelling which had a common mailbox to which all tenants had access. Customarily, the first tenant getting his mail each day removed all of the mail from the box and placed it on a table in the hallway, where the other tenants would pick it up. On the occasion in question, the defendant in *Maxwell* took a letter addressed to another tenant from the table. The court held that the authorized action of one tenant in taking the letter from the mailbox did not remove the letter from the protection of section 1702.

5. In order to establish aiding or abetting, the Government must show that there existed on the part of the defendant "some affirmative participation which at least encourage[d] the perpetrator" in the commission of the offense charged. *United States v. Buttorff*, 572 F.2d 619, 623 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978); *United States v. Thomas*, 469 F.2d 145, 147 (8th Cir. 1972), *cert. denied*, 410 U.S. 957, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973).

We do not agree that a person who receives stolen mail but who did not participate in the theft violates section 1702. Although we said in *Ashford* that "the statute [§ 1702] is applicable until the mailed matter is physically delivered to the person to whom it is directed or to his authorized agent * * *," 530 F.2d at 795, that language referred to the status of undelivered mail before any theft had occurred. In *Ashford* and the cases cited therein,[6] the courts held that section 1702 extended its reach to mail matter which had been lawfully removed from a postoffice box or postal receptacle.

■ Here, the evidence establishes a completed crime upon Dixon's theft of the letter.[7] Section 1702 provides that a person obstructs correspondence when he unlawfully "takes" mail matter which has been in the postal authorities' possession before it has been delivered to the addressee. The Government cites no persuasive authority for extending that language to reach a subsequent possession of the stolen mail matter. Congress, in a related statute, 18 U.S.C. § 1708 (1976), has drawn a distinction between stealing or taking mail and possession or receipt of stolen mail. Section 1702 contains no language relating to possession or receipt of stolen mail, but refers only to the *taking* of mail before delivery. Thus, we reject the Government's argument that Murry's possession of stolen mail matter under the circumstances of this case established that he violated section 1702.

Accordingly, we affirm Dixon's conviction, but reverse the conviction of Murry.

---

6. *Ross v. United States*, 374 F.2d 97, 103 (8th Cir.), *cert. denied*, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967) (letter delivered to home of deceased addressee, appropriated by defendant living at that address); *Maxwell v. United States*, 235 F.2d 930 (8th Cir.), *cert. denied*, 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956) (letter removed from common mailbox by addressee's cotenant, then taken by defendant from hall table); *United States v. Brown*, 425 F.2d 1172 (9th Cir. 1970) (letter misdelivered to defendant's mailbox); *United States v. Wade*, 364 F.2d 931 (6th Cir. 1966) (dictum, *citing Maxwell, supra*).

7. Murry might on this record have been prosecuted as an accessory after the fact. *See United States v. Bollenbach*, 147 F.2d 199, 201 (2d Cir. 1945), *rev'd on other grounds*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (to help dispose of stolen bonds was to become accessory after the fact to interstate transportation of stolen securities). However, "[a] person cannot aid or abet a crime which has already been completed." *Roberts v. United States*, 416 F.2d 1216, 1221 (5th Cir. 1969).