**UNITED STATES of America**

v.

**Kathleen COCHRAN, Defendant.**

**Crim. No. 84–00045–B.**

United States District Court,
D. Maine.

June 20, 1985.

Pasquale Perrino, Jr., Asst. U.S. Atty., Bangor, Me., for the U.S.

Peter Mills, Farmington, Me., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL

CYR, Chief Judge.

On November 9, 1984 Kathleen Cochran was charged in a one count indictment with possession of the contents of a letter which had been stolen from the mail in violation of 18 U.S.C. § 1708. On February 27, 1985 defendant filed a waiver of jury trial with the court. On June 4, 1985, following a hearing, the court approved defendant's jury trial waiver and the case proceeded to trial before the court.

### FINDINGS OF FACT

The United States Post Office in Farmington, Maine does not, itself, deliver mail directly to residents of dormitories at the University of Maine at Farmington. Instead, the mail for each dormitory is packaged in a separate bundle and the bundles are put in a mail bag which is then delivered to the "Student Life Office" at the University. In October of 1984 it was defendant's job, as an employee of the University, to sort the contents of the mail bag and, with the assistance of work-study students, to deliver the bundles to the appropriate dormitories. At the dormitories, resident staff would then place the individual mail items in locked boxes designated for the individual dormitory rooms.

In October 1984, U.S. Postal Inspector William Bothwell prepared so-called "test" letters, including one addressed to "Shelley Ann Vye, Scott Hall—South, University of Maine at Farmington, Farmington, ME 04938." Ms. Vye was a former student at the University and was no longer in residence at the time the letter was sent.

The Vye letter contained two one-dollar federal reserve notes, one fifty-cent piece, and one quarter. Bothwell recorded the serial numbers, series dates, and check letters from the dollar bills and the dates and markings of the coins. The letter was placed by the post office in the mail bundle for Scott Hall South on Tuesday, October 9, 1984. That same day Bothwell, who was conducting a surveillance of the building in which the "Student Life Office" is located, saw the defendant leave the building at 4:30 p.m. Bothwell followed her to a drug store where he went inside and watched her make a purchase. Then, Bothwell, who stood in line behind the defendant at the drug store counter, made a purchase and received change. The dollar bills Bothwell

received in change were not the same bills he had placed in the Vye letter. Bothwell then followed defendant to Jack's Trading Post where he watched the defendant make a purchase by handing four one-dollar bills to the cashier. He saw the cashier place those dollar bills on top of the dollar bills in the cash drawer. Then Bothwell, who was again standing in line behind the defendant, made a purchase and received in change four dollar bills which he saw the cashier take from the top of the stack of dollar bills in the cash drawer. Two of the dollar bills he received in change had serial numbers, series dates, and check numbers matching those on the dollar bills he had placed in the Vye test letter.

On October 10, 1984 Bothwell, along with Postal Inspector Moreland, interviewed the defendant at the University. After being advised of her *Miranda* rights defendant voluntarily prepared and signed a written statement in which she admitted taking $2.75 from the Vye letter and then ripping the envelope into small pieces.

## DISCUSSION

To sustain the charge of possession of stolen mail the government must prove beyond a reasonable doubt that the defendant had in her possession an article which she knew had been stolen and which in fact had been stolen from the mail. 18 U.S.C. § 1708.[1] Inasmuch as the letter (and contents) in question here was taken from the Student Life Office at the University, the question arises as to whether it was stolen "from the mail."

In support of her contention that the letter was not stolen from the mail, defendant relies on *United States v. Patterson*, 664 F.2d 1346 (9th Cir.1982); *United States v. Logwood*, 360 F.2d 905 (7th Cir.1966); and *United States v. Chapman*, 179 F.Supp. 447 (E.D.N.Y.1959).

In *Chapman*, letters addressed to patients at a hospital were placed in mail bags at the post office and the bags were picked up from the post office by a hospital employee, Chapman, who then stole letters from the bag prior to arriving back at the hospital. The court held that no violation of 18 U.S.C. § 1708 had occurred, because (1) in view of the specific postal regulation then in effect governing the delivery of mail to patients or inmates of institutions, the delivery of the mail was complete upon delivery to the hospital employee at the post office; and (2) the mail bag was not an "authorized depository for mail matter" as alleged in the indictment, 179 F.Supp. at 455–56.

In *Logwood*, a letter containing a driver's license was delivered in hand to the landlady of the apartment building where the addressee lived. There were no mail boxes for the tenants. The landlady, who usually received the mail addressed to her tenants, left the letter on her window sill where it was stolen by her son. The Seventh Circuit held that section 1708's coverage did not extend to the letter once it was delivered to the landlady, who was not an authorized custodian of the mail. 360 F.2d 905.

---

1. Section 1708 provides:

§ 1708. Theft or receipt of stolen mail matter generally

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository or mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

*Patterson* involved the theft of a letter addressed to an occupant of a room at a YMCA hotel. The letter was stolen after the postal service had delivered the letter, with other mail, to the front desk, where YMCA employees took complete control of the mail and placed it in YMCA "boxes." Relying on *Logwood*, the Ninth Circuit held that "[w]hen the letters came to rest in the YMCA holding boxes, they were outside of mail channels. Thus, the checks were not stolen from the mail." 664 F.2d at 1348. The *Patterson* court made no mention of the arguably contrary decisions in *United States v. Daughtry*, 639 F.2d 818 (D.C.Cir. 1981), and *United States v. Lopez*, 457 F.2d 396 (2d Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972).

*Daughtry* involved mail which had been stolen from the mail office of the United States House of Representatives following delivery by the Postal Service, but before being transmitted to the appropriate congressional offices. The court held the House mail office, at which mail was processed by House employees, to be an "authorized depository for mail matter," within the meaning of section 1708. The *Daughtry* court reasoned as follows:

Our construction of section 1708 is aided by a judicious 'appraisal of the realities of delivering and receiving mail in a modern environment.' *Smith v. United States*, 343 F.2d 539, 542 (5th Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965). The inclusiveness of the statutory language and the Congressional intent to ensure fully the integrity of the mails, *United States v. Lopez*, 457 F.2d 396 (2d Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972), mandate an interpretation of the statute consistent with a realistic understanding of the demands currently imposed on the postal system.

'Authorized depository' for purposes of section 1708 is defined as:

'Every letterbox or other receptacle intended or used for the receipt or delivery of mail on any city delivery route, rural delivery route, star route, or other mail route . . . .'

United States Postal Service, *Domestic Mail Manual* § 151.1, *incorporated by reference*, 39 C.F.R. § 111.1 (1979).

639 F.2d at 819–20. *Daughtry* distinguished *Logwood* and *Chapman* by pointing out that the landlady in *Logwood* and the hospital employee in *Chapman* were designated by the postal regulations or by the addressee to receive mail as the agents of the addressees of the letters, whereas the House mail office employees "functioned merely as a component of the authorized depository. The federal interest thus prevailed until the House Post Office relinquished control of the mail by distributing it to the appropriate Congressional office." *Id.* at 820–21.

In *United States v. Lopez*, 457 F.2d 396 (2d Cir.), *cert. denied*, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 114 (1972), a letter was stolen from a bundle of mail left in a hallway in front of the door of an office suite to which the letters were addressed. *Lopez* held that the letter was within the coverage of section 1708 in view of the "breadth of protection afforded the mails by the statute," particularly in light of the use in the statute of the general terms "any mail" and "any mail route." The court viewed the latter phrase as comprising "the path or places where mail is collected and delivered." 457 F.2d at 398–99.

Another decision arguably contrary to *Patterson*, yet not discussed by that court, is *Smith v. United States*, 343 F.2d 539 (5th Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965), wherein the Fifth Circuit held that theft of letters from an unlocked privately-owned box, located just inside the front door of a hotel and used for general delivery of mail to all residents, violated section 1708 because the box was an "authorized depository," which is defined by postal regulation as "every letter box or other receptacle intended or used for the receipt or delivery of mail." *Id.* at 542 & n. 4.

Some guidance as to the breadth of section 1708's coverage is provided in *United States v. Indelicato*, 611 F.2d 376 (1st Cir.

1979). There the defendant was charged with willful possession of checks " 'which had been stolen from the *mail.*' " *Id.* at 381 (*emphasis in original* ). Holding that the government need not prove theft from a postal receptacle, the court noted that section 1708 "reflects the more inclusive nature of the term 'mail' by making unlawful the possession of materials stolen 'from or out of any *mail*, post office, or station thereof, letter box, *mail receptacle*' (emphasis added). 18 U.S.C. § 1708." *Id.* The court also noted that "[t]he mail theft statutes must be read in light of the 'realities of delivering and receiving mail in a modern urban environment.' " *Id.* at 381 n. 4, *quoting Smith v. United States*, 343 F.2d 539, 542 (5th Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965).

█ The present indictment charges the defendant with possession of the contents of a letter which had been stolen "from and out of the mail." Thus this case is within the coverage of section 1708 if the letter remained part of the "mail" while in the Student Life Office, if the Student Life Office was part of the "mail route," or if that office was an "authorized depository" for mail matter.[2] *United States v. Lopez*, 457 F.2d at 399; *United States v. Daughtry*, 639 F.2d at 819–20.

The facts of the present case are clearly distinguishable from those in *Logwood, supra*. There the landlady, acting as an agent for her tenants, received the subject letter *in hand* and placed it on her window sill, from which it was stolen. At that point the letter was no longer in a place which could reasonably be viewed as an "authorized depository" or as part of the "mail route."

*United States v. Patterson, supra*, involving the mail received by a YMCA hotel employee at the front desk, is somewhat more difficult to distinguish.[3] However, the Ninth Circuit's exclusive reliance on *Logwood*, without any mention of the arguably contrary holdings in *Daughtry, Lopez* and *Smith*, and its questionable conclusion that the YMCA holding boxes were not "authorized depositories" for mail matter (without reference to the Domestic Mail Manual definition of that term), *see Smith v. United States, supra*, render *Patterson's* reasoning unpersuasive. Moreover, *Patterson's* narrow construction of section 1708 appears to be at variance with the First Circuit's view that section 1708, and particularly the term "mail," is inclusive of more than just the specific locations referred to in the statute and that section 1708 should be read in light of the realities of modern mail delivery. *United States v. Indelicato*, 611 F.2d at 381 & n. 4.

The Student Life Office was customarily used as the place where the Postal Service left all student and nonadministrative mail going to the University, for further distribution by University employees to the addressees. Thus, it served the same function as the House mail office in *United States v. Daughtry*, 639 F.2d 818. As the D.C. Circuit reasoned in *Daughtry:*

A single, standard letterbox is sufficient to handle the daily postal deliveries to the ordinary homeowner or apartment dweller.... A letterbox used in common by multiple addresses located within one building is also protected under federal law as an authorized depository. *United States v. Brown*, 551 F.2d 236 (8th Cir. 1977); *Wade v. United States*, 457 F.2d 335 (9th Cir.1972); *Smith v. United States, supra.* When sheer volume requires that mail be delivered to an office rather than to a mailbox, section 1708 must also be extended to safeguard that

---

**2.** The government's use in the indictment of the more general term, "mail," rather than the more particular term "authorized depository," does not preclude the government from establishing that the letter was in the "mail" by showing that it was in an "authorized depository." *Compare United States v. Indelicato*, 611 F.2d at 381 [where count charged conspiracy to possess checks "stolen from a receptacle owned and maintained by the United States Postal Department" government must prove that the checks were stolen from such a receptacle].

**3.** What may be critical to the holding in *Patterson* is that the mail was delivered directly to YMCA employees who themselves placed it in the holding boxes. Whereas the Student Life Office here, like the box in *Smith* and unlike the boxes in *Patterson*, was the place where postal authorities themselves deposited the mail.

office as an 'other authorized depository for mail matter.' A contrary conclusion would unduly circumscribe federal protection of the mail and serve to punish, rather than to promote, innovations which foster an efficient postal system.

Here, as in *Daughtry*, neither the defendant nor any other University employee was a designated agent of the addressee authorized to receive mail in behalf of the addressee. Rather, the University authorized defendant to handle the mail for purposes of distributing it to the addressees, essentially as "a component of the authorized depository." *Id.* at 820–21.

■ Section 153.62[4] of the Domestic Mail Manual provides for the redirection or return (to the post office) of mail received by schools for students no longer at the school, and, thus, indicates a continued Postal Service interest in such mail even after it has been delivered to the school by the Postal Service, *see United States v. Brusseau*, 569 F.2d 208, 209 (4th Cir.1977),[5] particularly where the mail is addressed, as was the letter in this case, to a student no longer in attendance.

■ However, the court need not decide at what point in the institutional distribution process the Vye letter ceased to be "mail," because the Student Life Office was part of the "mail route," or "the path or places where mail is collected and delivered," *United States v. Lopez*, 457 F.2d at 398–99; and, like the House mail office in *Daughtry*, the Student Life Office was an "authorized depository" for the mail, that is, a "receptacle intended or *used* for the receipt or delivery of mail on *any* . . . mail route." 457 F.2d at 820, *quoting* Domestic Mail Manual § 151.1 (emphasis supplied by *Daughtry*). Whether or not the distribution of the mail from the Student Life Office to the dormitories by University employees is considered a further extension of the "mail route," postal authorities themselves delivered the mail to the Student Life Office. Thus, that office was clearly a delivery point on the mail route and it was a receptacle where the mail was customarily placed.[6]

■ Accordingly, the Vye letter was in the "mail," for purposes of section 1708, when it was taken by defendant; and the evidence further establishes, beyond a rea-

---

4. .62 Mail Addressed to Persons at Hotels, Schools, Etc. Mail addressed to person at hotels, schools, and similar places is delivered to the hotel or school. If the addressee is no longer at that address, the mail will be redirected to his current address. If the forwarding address is unknown, the mail will be returned to the post office.

5. *Brusseau* involved a factual situation very similar to that in the present case. However, the defendant there was charged under 18 U.S.C. § 1702, rather than section 1708. Section 1702 explicitly covers mail "until it has been delivered to the person to whom it was directed." Some courts have held the reach of section 1708 to be the same as that of section 1702. *United States v. Levin*, 567 F.2d 579, 582–83 (3d Cir. 1977) [§ 1708 reaches misdelivered mail even if that mail is not placed in an officially authorized receptacle]; *United States v. Davis*, 461 F.2d 83, 87–88 (5th Cir.), *cert. denied*, 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1972) [same]; *but see United States v. Ashford*, 530 F.2d 792, 795–96 (8th Cir.1976) (dictum); *United States v. Logwood, supra.* Notwithstanding the different statute involved in *Brusseau*, that court's reference to the import of Domestic Mail Manual § 153.62 is pertinent to this court's consideration of the scope of the term "mail" under section 1708.

6. Delivery to the Student Life Office of mail intended for dormitory residents, rather than delivery to the dormitory buildings themselves, appears to be contrary to the policy articulated in § 615.42 of the Postal Operations Manual, which provides:

> .42 Dormitories or Residence Halls. Deliver mail to dormitory buildings and residence halls when addressed to a specific building. Deliver mail in bulk to a designated representative of the school who then is responsible for further distribution to students. A dormitory building or residence hall ordinarily consists of single-room units (or double rooms with connecting bath), and with separate centrally located facilities for dining and receiving visitors. Whether located on or off campus, and regardless of private ownership, such buildings as described are still dormitories and either the school or building owner is responsible for final delivery of student mail. Post office personnel are not to distribute mail into apartment-type mailboxes.

The Postal Service departure from the above-quoted procedure is troubling. However, later subsections explain:

> .491 Numerous exceptions were granted years ago when universities and colleges were considerably smaller (there were fewer stu-

sonable doubt, that defendant had in her possession the contents of that letter knowing that the letter and its contents had been stolen.

## CONCLUSION

It is, therefore, ADJUDGED that the Government has proven beyond a reasonable doubt that the defendant is GUILTY of the crime charged in the indictment, and the defendant is hereby convicted of that crime.

dents assigned to a room and fewer to each mail receptacle) and a national policy had not yet been adopted. Now, with some campuses containing upwards of 30,000 students and with larger dormitory buildings under construction constantly, it is necessary to deny extravagant services which may be in effect elsewhere on the same campus if we are to furnish basic services within allocated resources.

.492 The erroneous introduction of carrier delivery in dormitories in the past is not sufficient justification for perpetuating costly services which are in excess of the national standard. A firm attitude and support of USPS policy on the part of local postal management is the one best solution to the problem of providing equitable and adequate delivery service for the expanding enrollment of the nation's universities and colleges.

Thus the policy of delivery to dormitory buildings appears to have been undertaken to *preclude* postal employees from continuing the previous practice of distributing mail to *individuals within* dormitories. The direction to "deliver mail to dormitory buildings" and "not to distribute mail into apartment-type mailboxes" at those dormitories, would not appear to preclude the post office from reducing their services even further by leaving the mail at some building other than the dormitory to which it is addressed. This seems particularly true since the policy provisions of the Postal Operations Manual do not have the force of law, whereas the provisions of the Domestic Mail Manual are incorporated by reference in 39 C.F.R. § 111.1 (1979).

More importantly, the Student Life Office was, in fact, routinely used by the Postal Service as the depository for student mail; and even the fact that the Postal Service may have departed from its own policy in delivering the mail to that location does not take the Vye letter outside of section 1708, inasmuch as even misdelivered mail is within the reach of that section, *United States v. Lavin*, 567 F.2d 579, 582–83 (3d Cir. 1977); *United States v. Davis*, 461 F.2d 83, 87–88 (5th Cir.), *cert. denied*, 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1972).