UNITED STATES of America, Appellee,

v.

Carl Owen HILL, Appellant.

No. 78–1100.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1978.
Decided July 20, 1978.

Thomas D. Hanson, Des Moines, Iowa, argued and on briefs, for appellant.

Roxanne Barton Conlin, U.S. Atty., Des Moines, Iowa, argued and on brief, for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge, and MacLAUGHLIN,* District Judge.

LAY, Circuit Judge.

Carl Owen Hill appeals from his conviction on one count charging that he took a letter from an authorized depository for mail in violation of 18 U.S.C. § 1702, and one count charging that he forged a United States Treasury check in violation of 18 U.S.C. § 495. We affirm the latter count, but vacate the conviction under § 1702.

On January 3, 1977, a social security check in the amount of $306.20 arrived at the home of Hill's mother, Mrs. Emma L. Hill. Knowing she would not be home, Mrs. Hill told her son to pick up her check (which she anticipated would arrive that day) and to "take care of it." Mail was delivered at the Hill home through a slot in the door of the front porch. Carl Hill picked up the check in accordance with his mother's instructions and placed it on a telephone stand in her bedroom. Later in the day, however, he took the check to a store and cashed it. In order to do so he signed his mother's name on the check, but no indication of agency appeared as part of the endorsement. After cashing the check Hill spent the money he received on a variety of items.

In challenging his conviction on Count I Hill asserts that when he picked up the mail he acted as his mother's authorized agent, and therefore the mail was "delivered" within the meaning of 18 U.S.C. § 1702 at that time. He further asserts that no violation of § 1702 occurred when he later took the check because the prior delivery had terminated the applicability of the statute.

Section 1702 of Title 18 provides:

Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

The crucial question under § 1702 is what constitutes delivery so as to terminate the statute's applicability. In *United States v. Maxwell,* 137 F.Supp. 298, 303 (W.D.Mo. 1955), Judge Ridge found that "it is apparent from . . . the Act, that the Congress intended to protect 'letters' . . . not only while they are in the physical possession of the Post Office Department, but also thereafter." In affirming the district court Judge Sanborn noted:

---

* Harry H. MacLaughlin, United States District Judge, District of Minnesota, sitting by designation.

It seems to us, however, that the plain language of the statute discloses a clear intent on the part of Congress to extend federal protection over mail matter from the time it enters the mails until it reaches the addressee or his authorized agent.

*Maxwell v. United States*, 235 F.2d 930, 932 (8th Cir.), *cert. denied*, 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956).

*See also United States v. Brown*, 551 F.2d 236, 240–241 (8th Cir. 1977); *United States v. Ashford*, 530 F.2d 792, 795 (8th Cir. 1976); *Ross v. United States*, 374 F.2d 97, 103 (8th Cir.), *cert. denied*, 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177 (1967); *United States v. Wade*, 364 F.2d 931, 934 (6th Cir. 1966).

In *Maxwell*, mail for several apartments was delivered to a single mailbox. Common practice was for the first tenant who picked up mail to remove everyone's mail and place it on a hall table. Maxwell removed mail from the table and was charged with violating § 1702. In defense, Maxwell claimed that removal of the mail from the box ended federal jurisdiction. This court, however, held that until the addressee or his authorized agent received the mail, § 1702 applied. Emphasizing a factor distinguishing the facts in *Maxwell* from the present circumstances, this court observed:

> Neither the resident-manager nor any tenant of the building had express authority to receive mail matter "as agent of any specific addressee." [1]

235 F.2d at 931.

Once an authorized agent has received mail, the federal interest in insuring delivery to the ultimate addressee has been virtually eliminated. To require a specific degree of authority for an agent, beyond his authorization to receive the letter and hold it for the principal, would lead to intricate factual inquiries as to the degree of authority granted and the amount of control exercised by the agent. These are primarily state law questions with little relevance to federal concerns. We hold that for purposes of federal jurisdiction, delivery occurs when an agent expressly authorized to receive mail does in fact receive the mail in question.

The evidence is undisputed that an agency relationship existed between Carl and Emma Hill for purposes of picking up and holding any letters received in the mail on January 3, 1977. The government urges, however, that Carl Hill's status as an agent terminated when he stole the check. Section 112 of the Restatement (Second) of Agency (1957) provides:

> Unless otherwise agreed, the authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal.

*See also* W. Seavey, Law of Agency § 45(f) (1964). Thus, if Carl Hill had intended to convert the check at the time he removed the mail from the porch, his agency would have terminated and he would be subject to § 1702. *Cf. United States v. McLean*, 424 F.2d 513, 514 (8th Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 89, 27 L.Ed.2d 91 (1970); *United States v. Bruton*, 414 F.2d 905, 908–09 (8th Cir. 1969). However, we find no evidence in the record from which a jury could find such intent was formed before Carl Hill picked up the mail.

Carl Hill testified as follows:

Q. Did you have occasion to pick up the mail that morning?

A. Yes, I did.

Q. What did you do with it?

A. Put it on the telephone stand.

Q. Did you see anything on the telephone stand when you took the mail in that morning?

A. Yes, I did.

Q. What else did you see?

---

1. Both *United States v. Ashford*, 530 F.2d 792 (8th Cir. 1976), and *United States v. Brown*, 551 F.2d 236 (8th Cir. 1977), also relied upon by the government, are inapposite. In neither case was express authority given to an agent to receive mail.

A. The bill from Penney's. A bill in the envelope.

Q. What did you do then?

A. I ate breakfast, dressed, did a few things around the house I normally do in the morning when I get up. .

Q. Did you have occasion to go any place then?

A. I went somewhere that afternoon.

Q. All right, where did you go?

A. I went to Penney's store.

Q. Did you take the check with you?

A. Yes, I did.

The evidence indicates that Carl Hill acted as Emma Hill's authorized agent when he picked up his mother's mail. Thus federal jurisdiction under § 1702 had terminated before he took the check. We therefore vacate the defendant's conviction on Count I.

In Count II the defendant was charged with violating 18 U.S.C. § 495 by forging his mother's signature on the social security check when he cashed the check at a department store.

Hill asserts that he did not violate § 495 since he asked the department store clerk if he needed to endorse the check "Emma Hill *by* Carl Hill" and she replied in the negative. In effect, he argues that actual knowledge of a purported agency relationship by the person cashing the check prevents the signature from being a forgery even though there is no indication of agency on the face of the instrument. We disagree.

In *Gilbert v. United States*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962), the Supreme Court held that an endorsement consisting of the name of the payee followed by an individual's signature as agent is not a forgery within § 495 even if made without authority, although it may be a misrepresentation of an agency relationship. However, the fact that Hill may have made an *oral* misrepresentation as to his status as an agent does not render the *Gilbert* rationale applicable in the absence of an indication of agency in the endorsement itself. *See United States v. Gilbreath*, 452 F.2d 992, 993 (5th Cir. 1971); *United States v. Wilkins*, 328 F.2d 120, 121 (2d Cir. 1964); *Selvidge v. United States*, 290 F.2d 894, 895–96 (10th Cir. 1961).

There is no doubt that if the defendant had authority from the payee to cash the check, he would not be guilty of forgery under § 495. *See United States v. Gilbreath, supra.* The record indicates that the jury was fully instructed and found that Carl Hill did not have authority from his mother to cash the check.[2] Since no indication of agency appeared on the face of the instrument and the jury found that the defendant had neither the authority to endorse the check nor a mistaken belief that he had such authority, the conviction on Count II was proper and is affirmed.

The judgment of conviction is reversed as to Count I, affirmed as to Count II.[3]

---

2. The trial court instructed the jury as follows:
A person may authorize another to act on his or her behalf or as his or her agent to endorse checks. An agent may, however, commit forgery by making or signing a check in disobedience of his or her instructions or by exceeding his or her authority. On the other hand, when one endorses a check with an honest belief in his authority to do so he is not guilty of forgery.

3. The defendant was sentenced to six months imprisonment on Count I and to two years suspended sentence on Count II. He was ordered to make restitution in the amount of $306.20 during the first 18 months probation.