**UNITED STATES of America, Appellee,**

v.

**Charles William REAGLE, III, Appellant.**

**No. 83–5683.**

United States Court of Appeals, Third Circuit.

Argued April 24, 1984.

Decided Aug. 3, 1984.

As Amended Aug. 16, 1984.

* Honorable H. Lee Sarokin. United States District Court for the District of New Jersey, sitting

W. Penn Hackney, Federal Public Defender (argued), James V. Wade, Asst. Federal Public Defender, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh, Asst. U.S. Atty. (argued), Richard A. Bacvar, Legal Intern, Pittsburgh, Pa., for appellee.

Before ADAMS and BECKER, Circuit Judges, and SAROKIN, District Judge.*

**OPINION OF THE COURT**

ADAMS, Circuit Judge.

This appeal presents the question whether the unauthorized act of signing another

by designation.

person's name to a Social Security check, despite a reliance upon a fraudulent power of attorney, may be the basis of a conviction for forgery under 18 U.S.C. § 495 (1982).[1] The question posed requires that this Court for the first time decide whether the crime of forgery incorporates the element of intent to deceive the party cashing the signed check.

Appellant Charles Reagle was convicted on sixteen counts of forging and uttering eight United States treasury checks by endorsing the name of the payee on the checks. In his defense, Reagle argued that because he was acting pursuant to a power of attorney, admittedly fraudulent, his actions did not constitute forgery. On appeal, Reagle maintains that the district court erred in refusing to instruct the jury that *Gilbert v. U.S.*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962), is the law governing the case, thus in effect preventing the defendant from arguing that his actions, taken together, amounted to an agency endorsement and not a forgery under § 495.[2]

a.

The facts of the case are not disputed. Following the death of William Wilson in June 1977 in North Carolina, Reagle forged Wilson's name to a power of attorney authorizing Reagle to cash Wilson's Social Security checks. The government checks began to arrive at Wilson's North Carolina address in December 1977, six months after Wilson's death, and were cashed by Reagle. After his discharge from the Army in November 1978, Reagle moved back to Pennsylvania and, pursuant to the forged power of attorney, opened a joint bank account in his and Wilson's name at the Mercer County State Bank in Sandy Lake. Although bank officials remembered Wilson as a member of the Sandy Lake community before his move to North Carolina with the Reagles, there is no evidence that they were familiar with his signature. Reagle proceeded to cash at the Mercer County Bank eighteen Social Security checks that were made payable to Wilson. Of these, ten checks (not the subject of the indictment), dated from November 1978 to August 1979, were not endorsed on the reverse side. Beginning in August 1979 Reagle negotiated the eight checks at issue here by signing Wilson's name on the back of each and then depositing them in the joint account.

In April 1981 the Pennsylvania state police questioned Reagle about Wilson's death and the Social Security checks that were made payable to Wilson and cashed by Reagle. Reagle admitted signing Wilson's name on each of the eight checks and then cashing them. He also made a lengthy tape-recorded statement in which he implicated himself in Wilson's death and in the forgery of the power of attorney.

In the course of his statement, Reagle gave the following account: Wilson had been a long-time friend of Reagle's grandfather and had lived with the Reagle family in North Carolina for various periods of time. In June 1977 Reagle, with the help of two friends, dug a deep hole in a sandy area near Fort Bragg, North Carolina. The next day Reagle and one of the friends took Wilson for a ride out to the dunes. Reagle gave Wilson some sleep medication and Wilson fell asleep in the car. Reagle then connected the exhaust pipe to the car interior with pieces of hose and turned the

---

1. 18 U.S.C. § 495 (1982) provides in pertinent part:

    Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

    Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited: ...
    Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

2. We find no merit to Reagle's other contentions, namely, that the district court erred in admitting character evidence and abused its discretion in imposing a ten year sentence.

car engine on. Within 20 minutes Wilson was dead. Reagle and his friend then buried Wilson in the hole that had been dug previously.

For reasons not discussed in the record before this Court, Reagle was never prosecuted for his role in Wilson's death. When he was questioned by the Pennsylvania state police about the Social Security checks and the circumstances of Wilson's death, Reagle confessed to the killing, but explained that Wilson, who was quite old and who had recently suffered a stroke, no longer wanted to live and repeatedly asked Reagle to take his life. '

b.

In *Gilbert,* the Supreme Court held that " 'forgery' under § 495 does not embrace a purported, but misrepresented, agency endorsement ..." 370 U.S. at 652, 82 S.Ct. at 1401. There, the petitioner, an accountant, had endorsed two government checks made out to his clients, Daniel and Charlene Bartfield, in the following manner:

"Daniel H. Bartfield
Charlene R. Bartfield
R. Milo Gilbert, Trustee"

Gilbert claimed that a written power of attorney, signed by both clients, authorized him to endorse tax-refund checks and that the word "Trustee" after his name served to designate the particular bank account where he deposited and held all client-refunds until they were disbursed. The Bartfields acknowledged that they had signed a power of attorney but denied that they had ever authorized Gilbert to receive and endorse their tax-refund checks. The government charged Gilbert with forging the Bartfields' endorsement in violation of § 495. The Supreme Court overturned his conviction holding that because Gilbert add-

ed his own signature purporting to endorse the checks as the agent of the Bartfields he was not guilty of forgery. The endorsement, on its face, was precisely · what it purported to be: the signature of Gilbert. The wrongful act was not in affixing the Bartfields' names to the checks, but rather in Gilbert's false representation of his authority to do so. "Where the 'falsity lies in the representation of facts, not in the genuineness of execution' it is not forgery," the Court declared, quoting *Marteney v. U.S.,* 216 F.2d 760, 763–64 (10th Cir.1954). Relying on the common law definition of forgery to determine "whether 'forges' under § 495 embraces agency endorsements," the *Gilbert* Court focused its attention on the instrument itself. 370 U.S. at 650, 82 S.Ct. at 1399.[3] The Court cited with approval *Selvidge v. U.S.,* 290 F.2d 894, 895 (10th Cir.1961), in which the Tenth Circuit emphasized that to escape the net of § 495 the purported agency relationship must be apparent on the face of the instrument.[4]

Other circuits have refused to extend the *Gilbert* rationale to oral misrepresentations of agency relationships. In *U.S. v. Hill,* 579 F.2d 480 (8th Cir.1978), the defendant was convicted of forgery under § 495 for cashing his mother's Social Security check at a department store notwithstanding the fact that he endorsed her name to the check only after verbally assuring store personnel that his mother had given him her permission to cash the check. The Eighth Circuit upheld the conviction "since no indication of agency appeared on the face of the instrument and the jury found that the defendant had neither the authority to endorse the check nor a mistaken belief that he had such authority." 579 F.2d at 483. Similarly, in *U.S. v. Wilkins,*

---

**3.** The common law crime of forgery has three elements: a) the false making or material alteration, b) with intent to defraud, c) of a writing which, if genuine, might be of legal efficacy. *See U.S. v. McGovern,* 661 F.2d 27, 29 (3d Cir. 1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982).

**4.** Holding that an unauthorized agency endorsement did not constitute forgery, the court in

Selvidge relied on the rule stated in 37 C.J.S. Forgery § 8 at 38 (1943) that:

An agent may commit forgery by signing an instrument in disobedience of his instructions or in improper exercise of authority, but one who executes an instrument purporting *on its face* to be executed by him as an agent, when in fact he has no authority to execute such instrument, is not guilty of forgery (emphasis added).

328 F.2d 120 (2d Cir.1964), the Second Circuit held that *Gilbert* did not apply where the defendant stole a $60 treasury check made payable to A. Rivera, endorsed Rivera's name and told the taxi company where he cashed the check that Rivera was his aunt. The court held that the defendant's actions constituted " 'the making or altering a writing so as to make the writing or alteration purport to be the act of some other person, which is not'—the conduct which, if done with the requisite guilty knowledge, constituted forgery at common law." 328 F.2d at 121 (citation omitted).

In the case before us Reagle endorsed the eight checks made out to Wilson simply by writing Wilson's name on the reverse side of the checks. Reagle contends that the officers of the Mercer County Bank had in their possession the power of attorney purporting to authorize Reagle to act on Wilson's behalf. The crux of Reagle's argument is that the bank officials were aware of Reagle's true identity and therefore, in signing Wilson's name, Reagle was not holding out that such writing was, in fact, Wilson's signature. He argues, but without record evidence to support him, that the bank officials acknowledged the purported agency relationship by permitting Reagle to negotiate the Social Security checks by signing Wilson's name only. Reagle contends that application of the *Gilbert* rule requires this Court to find that because Reagle had misrepresented his authority to the bank when filing the forged power of attorney, the endorsements on the checks were not forgeries. We cannot agree.

■ We do not doubt that at some point Reagle might have been prosecuted under § 495 for forging the purported power of attorney from Wilson. The dissent, however, would take this fact and extend it to hold that Reagle could not be prosecuted for the act of signing Wilson's name to the checks. This proposition rests, as we see

it, on the dissent's reading into the crime of forgery the element of intent to deceive the recipient of the altered instrument. Under this view, the fact that the bank had previously accepted Wilson's checks when presented by Reagle with no signature affixed might suggest that the signing of Wilson's name to the last eight checks was not intended to deceive the bank officers as to the origin of the signature or who the signatory was.[5] While there is a certain surface appeal to this position, there is no case support for such an interpretation of the crime of forgery. Indeed, this Court has narrowly construed the elements of forgery to encompass only the false making or alteration of a writing of legal significance with the intent to defraud. *See U.S. v. McGovern*, 661 F.2d 27, 29 (3d Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982). In the crime of forgery, the focus is on the instrument itself and the mens rea of the signatory at the time of the signing.

■ If Reagle had signed his own name or initials to the checks or otherwise indicated on the checks that he was acting in a representative capacity we might be impelled to follow *Gilbert* and find that the wrongful act evidenced on the reverse side of the checks consisted in Reagle's false representation of an agency relationship. However, Reagle did not sign his own name or initials and thus we need not address the possible application of *Gilbert* to a different factual situation than the one before us. In this case the endorsement on the checks does not represent that an agency relationship—however fictitious—existed between Wilson and Reagle. Reagle simply affixed Wilson's name to a number of government checks as an endorsement prior to negotiating them. Because the evidence shows that Reagle had no authority whatsoever to act on Wilson's behalf, his signing of Wil-

---

**5.** Although the officers of the Mercer County Bank, the depositary bank, arguably relied on the power of attorney and not the genuineness of the endorsement in accepting the checks, the same cannot be said of the other collecting banks in the chain of negotiation or of the maker. By forging Wilson's endorsement, Reagle ultimately defrauded the United States government, an entity that had no notice at all of the purported power of attorney.

son's name on the checks was a forgery in violation of § 495.

Accordingly, the judgment of the district court will be affirmed.

BECKER, Circuit Judge, dissenting.

This case is one of the strangest I have ever seen. So far as I can determine, the defendant, Charles Reagle, has confessed to a premeditated murder. For some reason, he has not been prosecuted. He has also, so far as I can see, forged a power of attorney in violation of 18 U.S.C. § 495 (1982). He has not been prosecuted for that crime either. Inexplicably, he has been prosecuted for the one crime which, under the applicable caselaw, he did not commit: forgery of a check.

The majority rests its judgment upholding the conviction on its distinction of the rule of *Gilbert v. United States*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962). It holds that *Gilbert* does not apply where the false representation of an agency relationship between the endorser and payee of a check appears "merely" on a power of attorney filed with a depositary bank. Rather, the majority holds, the Supreme Court's decision in *Gilbert* is limited to cases in which the false representation of agency appears "on the face" of the instrument. While I acknowledge that this difference exists between *Gilbert* and this case, and while I acknowledge that other courts, perhaps also dissatisfied with the seemingly hyper-technical construction of forgery given in Justice Harlan's opinion in *Gilbert*, have held similarly, I do not believe this difference amounts to a legally cognizable distinction. Accordingly, I respectfully (and regretfully) dissent.[1]

As the majority notes, *Gilbert* holds that a false representation of an agency relationship does not amount to forgery. As I read Justice Harlan's painstakingly researched opinion, it holds that forgery is a form of false impersonation, a false representation of identity accomplished by mimicry of an identifying mark (the signature) of the person impersonated, and that there is no forgery where there is no false impersonation. For example, where the (false) agency is disclosed on the check itself by reason of the form of the endorsement, there is no false representation of identity, only a false representation of agency, and therefore there is no forgery.

In this case, the record unequivocally establishes that the reason the depositary bank (Mercer County Bank) honored the checks was not that it thought Reagle's signature was that of Wilson, but rather that it thought Reagle was Wilson's duly authorized agent. The record clearly shows that the officers of the bank, situated in a small community where Reagle and Wilson were known, knew that Reagle was not Wilson. Indeed the evidence is that the bank officers knew that the Reagle and Wilson families were close and that the Reagles had done a lot of banking for Wilson over the years. It seems clear from the record that the depositary bank honored the checks paid to Wilson because of a written power of attorney that purported to establish an agency relationship between Wilson and Reagle. It was Reagle's forgery of this power of attorney—and not his affixation of Wilson's signature to the social security checks—that led to the bank's being deceived. While Reagle could quite likely have been indicted and prosecuted for this forgery of the power of attorney, *see* 18 U.S.C. § 495, the fact is that he was not.

The majority suggests, *see* Majority Op. at n. 5, that while the depositary bank may not have been a victim of forgery—because it knew that Reagle was not Wilson—subsequent collecting banks, who were without benefit of the also-forged power of attorney, may have endorsed the checks and given their warranties of presentment and transfer, *see* U.C.C. § 3–417, on the mistaken belief that Wilson's signature was genuine. Such a possibility would not be present where (as in *Gilbert*) the false

---

**1.** I do agree with the majority's holding that there is no merit to Reagle's other contentions, namely, that the district court erred in admitting character evidence and abused its discretion in imposing a ten-year sentence.

representation of agency was on the face of the instrument; the collecting banks would know as much as the depositary bank in such cases. While this theory could justify the distinction the majority makes today, I believe it relies on an unrealistic assumption. In making their presentment and transfer warranties, collecting banks do not rely on their ability to sue the individual endorser. Rather, they almost always rely on the warranties made by the depositary banks and previous collecting banks. In short, the collecting banks have no interest in whether Wilson's signature was genuine.[2]

Thus, because the majority's holding cannot be squared with *Gilbert*, I dissent.

**2.** I recognize that two sister circuits have held that *Gilbert* does not apply where an oral misrepresentation as to agency is made. Those cases do not fully support the holding here. If *Gilbert* were read to apply to oral misrepresentations, every defendant would have an incentive to invent recollections of such oral representations. To my mind, therefore, the *Hill* and *Wilkins* cases cited by the majority amount to a "statute of frauds" or "parole evidence rule" gloss on the *Gilbert* case. Here, however, there is a writing—albeit an apparently forged one. There is no reason to worry that Reagle invented the power of attorney after he was charged with forgery.